IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MAURICE RISTER,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 9:16-1105-RBH-BM<br><br><br>**REPORT AND RECOMMENDATION** |

  The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

  The record reflects that Plaintiff began receiving Supplemental Security Income (SSI) benefits as a disabled child at age fifteen based on a claim filed on February 6, 1997. (R.p. 176). The 1997 determination is not on file and it is unclear the basis of that award of benefits. However, when Plaintiff turned eighteen years old his continued eligibility was reviewed under the adult definition of disability, and he was found to no longer be disabled. That determination was upheld upon reconsideration (Plaintiff appeared <u>pro se</u> at a hearing before an Administrative Law Judge (ALJ)) in a decision dated October 17, 2002. (R.pp. 176-181). Plaintiff then filed another claim for SSI benefits on June 4, 2007, which was denied initially and upon reconsideration. A request for a



hearing was made, but Plaintiff's attorney at the time later withdrew the hearing request, and Plaintiff's claim was dismissed by the ALJ on October 2, 2009. (R.p. 172).

On March 8, 2010, Plaintiff filed another SSI claim as well as a claim for Disability Insurance Benefits (DIB)[1]. Those claims were also denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing, but the request for hearing was again later withdrawn (Plaintiff was represented by counsel). The ALJ thereafter denied Plaintiff's claims on March 9, 2012. (R.p. 112). Plaintiff, by now proceeding pro se, appealed the denial of benefits, but the Appeals Council denied Plaintiff's request for review on May 31, 2012. (R.pp. 113-114).

Plaintiff applied again for DIB and SSI on July 13, 2012, alleging disability beginning January 1, 2008,[2] due to major depression disorder (recurrent) and psychotic features. (R.pp. 19, 263, 270, 297). As before, Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an ALJ, which was held on February 19, 2014. (R.pp. 40-85). The ALJ thereafter denied Plaintiff's claims in a decision issued June 25, 2014. (R.pp. 19-34). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

[2] Plaintiff later amended his alleged onset date to March 20, 2009. (R.pp. 43, 389, 396). However, the ALJ used the original alleged onset date of January 1, 2008 in her decision. (R.pp. 19, 22, 34).

2



Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's June 25, 2014 decision is not supported by substantial evidence, and that the Court should reverse the decision and award benefits to Plaintiff based on disability commencing March 20, 2009. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



3

disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff was thirty-one years old at the time of the ALJ's decision, has a high school certificate of attendance,[3] and past relevant work experience as a cleaner in a hospital. (R.pp. 26, 33, 48, 78, 263, 297, 298). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[4] of schizoaffective disorder, learning disorder not otherwise specified, and borderline intellectual functioning (R.p. 22), he nevertheless retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the nonexertional limitations of unskilled work with no interaction with the public and a limitation to work requiring little to no reading or math skills (R.p. 26). At step four, the ALJ found that Plaintiff could perform his past relevant work as a cleaner in a hospital (both as it was actually performed and

---

[3] Plaintiff was in special education classes in school. Although he completed the twelfth grade, he received a certificate rather than a diploma. (R.pp. 26, 48).

[4] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

4



as it was generally performed in the economy) with this RFC, and was therefore not disabled during the period at issue. (R.p. 33).

Plaintiff asserts that the Commissioner's decision is not supported by substantial evidence and is not correct under controlling law. In particular, Plaintiff contends that the ALJ erred by relying on post-hearing evidence that was never proffered to Plaintiff, by rejecting the opinions of Plaintiff's treating physicians, by finding that Listing of Impairment §12.05C was not met or equaled,[5] by failing to properly evaluate Plaintiff's subjective symptoms, and by failing to make a proper RFC assessment. After careful review and consideration of the arguments presented, for the reasons set forth hereinbelow, the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error by failing to properly account for and evaluate Plaintiff's mental RFC, in particular by failing to account for Plaintiff's limitations in concentration, persistence, and pace in compliance with the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).

Plaintiff began treatment at the Columbia Area Mental Health Center (CAMHC) beginning in September 2002, and his medical records indicate that he received fairly regular treatment there beginning in January 2011. (R.pp. 426-452, 453-459). In an abstract of medical records signed by Kathy Hugg, LPC-I and Dr. William Walkup of CAMHC, Plaintiff's diagnoses were listed as schizoaffective disorder, learning disorder,[6] and extra pyramidal symptoms

---

[5]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to meet a listing, a claimant's impairment must "meet *all* of the specified medical criteria." Id. (emphasis in original).

[6]As noted above, Plaintiff attended special education classes during school. The evidence relating to a learning disorder shows that IQ testing after Plaintiff's completion of kindergarten was in the low average range. (R.p. 411). Testing in 1991, when Plaintiff was in second grade, revealed
(continued...)



(EPS)/bradykinesia secondary to Prolixin Decanoate (prescribed anti-psychotic medication). (R.p. 428). Treatment notes from CAMHC included diagnoses of major depressive disorder, severe with psychotic features (R.p. 431, 433, 435, 439, 441) and schizoaffective disorder (R.p. 445, 447, 450, 452, 455, 457, 459).

On July 21, 2010, treating psychiatrist Dr. Edward Kendall of Columbia Mental Health wrote that Plaintiff was "clearly totally disabled" and "unable to work;" (R.p. 481); and on October 19, 2010, Dr. Kendall stated that he would "write a letter in support of disability" when it was needed. (R.p. 479). Although the ALJ appears to discount Dr. Kendall's July 2010 opinion (the ALJ refers to the exhibit number, but does not identify Dr. Kendall), stating that "this treating source failed to support this opinion with any specific limitations" while the treatment records reported Plaintiff's

---

[6](...continued)
scores of Verbal 84, Performance 81, Full Scale 81. (R.pp. 411-412). It was recommended that Plaintiff continue receiving special education services as an emotionally disabled student, and resource services were provided. (R.p. 412). In 1993, Plaintiff's IQ scores were Verbal 67, Performance 66, and Full Scale 64, although at the time of testing these scores were viewed as underestimates of his true abilities. Even so, it was recommended he begin receiving special education services as a learning disabled student. (R.p. 412).

In 1997, when Plaintiff was fourteen years old, IQ testing revealed scores of Verbal 71, Full Scale 68, and Performance 69. Although it was noted that Plaintiff's general verbal abilities were in the borderline range, his general cognitive ability as well as his general nonverbal abilities were in the intellectually deficient range. These scores were considered to be an accurate estimate of Plaintiff's abilities at the time. Plaintiff's ability to sustain attention, concentrate, and exert mental control was noted to be intellectually deficient and it was recommended that he be placed in special education classes as an "educable mentally disabled student." (R.pp. 413-417).

Testing during a consultative psychological evaluation by psychologist Dr. A. N. DePace in August 2007 resulted in IQ scores of Verbal 71, Performance 83, and Full Scale 75, with an impression of borderline intellect. (R.p. 420). A psychological evaluation by psychologist Dr. Robert E. Brabham in January 2014 indicated a Full Scale IQ score of 69, and Dr. Brabham's impression was that Plaintiff was functioning at a moderate level of intellectual disability with a diagnosis of mild mental retardation. (R.pp. 374, 376).

6



"reasonable response to medications" (R.p. 33), the ALJ does not appear to have addressed Dr. Kendall's October 2010 statement that he would write a letter in support of disability.

In an undated statement (but which contains a facsimile date of August 1, 2012), treating psychiatrist Dr. William Walkup opined that he did not feel that Plaintiff was "capable of maintaining gainful employment." (R.p. 429). In a subsequent Medical Statement dated February 18, 2014, Dr. Walkup opined that, based on Plaintiff's combined mental impairments, he had no useful ability to function in such basic work-related activities as understanding and remembering very short and simple instructions, maintaining attention, maintaining regular attendance, sustaining an ordinary routine without special supervision, making simple work-related decisions, completing a normal work day, performing at a consistent pace, responding appropriately to supervisory criticism, or dealing with normal work stress. Dr. Walkup also opined that Plaintiff's mental impairments would cause work absenteeism for more than four days a month. (R.pp. 498-499). However, the ALJ discounted Dr. Walkup's opinion, finding that Dr. Walkup had failed to explain his findings or include any medical/clinical support for his assessment. The ALJ also found that these findings were inconsistent with Dr. Walkup's own treatment records and records from mental health professionals at CAMHC, and were also inconsistent with Plaintiff's activities of daily living. The ALJ thought that Dr. Walkup's "opinion was most consistent with patient advocacy." (R.pp. 32-33). Additionally, the ALJ found that Plaintiff's "stability with medication compliance was inconsistent with Dr. Walkup's findings of a complete inability to perform the mental ability and aptitudes needed to perform unskilled work." (Id.).

After a review of the medical evidence including the records noted hereinabove, at step three of the sequential evaluation process the ALJ considered the severity of Plaintiff's mental

7



impairments and found that, both singly and in combination, these impairments did not meet or medically equal Listings 12.02 (organic mental disorders), 12.04 (affective disorder), or 12.05 (intellectual disability). (R.p. 22). Even so, in making this determination the ALJ found that Plaintiff's mental impairment did result in his having moderate difficulties with respect to social functioning and with regard to concentration, persistence, and pace. (R.p. 23). Then, in applying Plaintiff's limitations to his RFC, the ALJ found that Plaintiff was limited to unskilled work with no interaction with the public and to work requiring little to no reading or math skills. (R.p. 26). However, these work limitations were apparently imposed based on Plaintiff's learning disorder, as in the discussion that followed the ALJ stated that "[i]n spite of [Plaintiff's] deficits in cognitive functioning and his learning disability, the record supported good adaptive skills with an ability to perform simple, unskilled tasks". (R.p. 27). Additionally, the ALJ stated that "secondary to the claimant's learning disorder and limited academic ability, the claimant was also restricted from work activity requiring more than minimal reading or math skills." (R.p. 30). However, it does not appear from a plain reading of the ALJ's decision that she considered Plaintiff's moderate difficulties in concentration, persistence, or pace in assigning these limitations.

Concededly, restricting a claimant like the Plaintiff to unskilled work in order to account for mental impairments, which could include a moderate restriction with respect to concentration, persistence or pace, was an RFC formula that had generally found support in the case law at the time the ALJ issued her decision, and therefore she may not have believed she needed to separately address this issue. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097, at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or



pace]; McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]; see also Hyser v. Astrue, No. 11-102, 2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning].  However, shortly after the ALJ's decision in this case, the Fourth Circuit held in Mascio that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).  Rather, in Mascio the Fourth Circuit held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace.  Mascio, 780 F.3d 638.  This distinction is particularly significant here, as when the ALJ asked the VE at the hearing whether the Plaintiff would be able to perform his past relevant work if he was unable to maintain focus and concentration sufficient to complete an eight hour workday with the customary breaks (i.e., stay on task), the VE replied that Plaintiff would not be able to perform his past relevant work with this limitation.  (R.pp. 79-80).[7]

        Therefore, although the ALJ limited Plaintiff to unskilled work, that restriction addresses the complexity of the work, not Plaintiff's ability to stay on task as required by Mascio.  See Mascio, 780 F.3d at 638; Salmon v. Colvin, No. 12-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) [noting that "the Fourth Circuit made clear that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question

---

[7]The ALJ did not include this limitation in Plaintiff's RFC.  (R.p. 26).

9



to simple, routine, tasks or unskilled work."] (citations and quotations omitted); cf. Straughn v. Colvin, No. 14-200, 2015 WL 4414275, at *4 n.5 (M.D.N.C. July 20, 2015) [reasoning that the ALJ "did not address how the RFC's limitation to 'simple, routine' tasks addressed his finding of 'mild limitations with concentration, persistence or pace.' Thus, the ALJ's decision may also run afoul of the recent decision in Mascio"] (citation and quotation omitted). Similarly, the ALJ's limitation of the Plaintiff to no contact with the public deals largely with workplace adaptation, rather than concentration, pace, or persistence. See McPherson v. Colvin, No. 16-1469, 2016 WL 5404471, at * 8 (E.D.Pa. Sept. 28, 2016)[rejecting that moderate restrictions in concentration, persistence, and pace were accommodated by a hypothetical to a VE that only included: 1) the performance of routine, repetitive tasks; 2) a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); and 3) no public interaction and occasional interaction with coworkers and supervisors](citing Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015)); Knight v. Commissioner, No. 15-1512, 2016 WL 4926072 (D.S.C. Sept. 16, 2016)[The ALJ's limiting the hypothetical to "unskilled work with no direct interaction with the public; only occasional team type interaction with coworkers; [who] should not be required to adapt to greater than simple, gradual changes in the workplace" did not account for the Plaintiff's moderate limitation in concentration, persistence, or pace]; Carr v. Colvin, No. 15-685, 2016 WL 4662341, at *10 (D. Md. Sept. 7, 2016)[Finding that the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with supervisors, co-



workers, and the public accounts for Plaintiff's moderate difficulties in social functioning,[8] but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace].[9]

As noted, the ALJ did not have the benefit of the Fourth Circuit's decision in Mascio to guide her at the time she reached the decision in this case, and therefore she included no discussion or finding with respect to Plaintiff's ability to stay on task in light of his moderate limitation in concentration, persistence or pace. Hence, while it may be that the ALJ will find, based on the evidence, that Plaintiff's moderate impairment in concentration, persistence, or pace will not affect his ability to stay on task sufficient to perform the unskilled work identified in the decision; see Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; since the ALJ did not make that determination or finding in her decision, this Court may not do so in the first instance. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) [Court cannot affirm a decision on a ground

---

[8]The ALJ found that Plaintiff had moderate difficulties in social functioning in this case, and accounted for Plaintiff's moderate social limitations by restricting him to no contact with the general public.

[9]The ALJ's limitation of the Plaintiff to work requiring little or no reading or math skills also does not address Plaintiff's moderate limitations as to concentration, persistence or pace. See, e.g., Proctor v. Colvin, No. 2:15–CV–16255, 2017 WL 191174, at *4 (S.D.W. Va. Jan. 17, 2017) ["ALJ did not explain his reasons for including a condition that Claimant cannot read or write anything above a sixth grade reading level and, in any event, this condition has no direct bearing on Claimant's ability to stay on task [.]"]; Tyler v. Colvin, No. 15-225, 2016 WL 831944, at *3 (M.D.N.C. Feb. 29, 2016)[Finding that "[t]he additional limitations in Plaintiff's RFC limiting him to [unskilled] work that does not involve reading or writing fails to account for his moderate limitations in concentration, persistence, or pace."].

11



that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have thinking."].

Therefore, the decision should be reversed and remanded for consideration of Plaintiff's RFC in compliance with Mascio. With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____

May 26, 2017  
Charleston, South Carolina

Bristow Marchant  
United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

